811 P.2d 81

**FLEET MORTGAGE CORP.,**
**Plaintiff–Appellee,**

**v.**

**Pamela C. SCHUSTER,**
**Defendant–Appellant,**

**and**

**Ronald A. Schuster, Defendant.**

**No. 19273.**

Supreme Court of New Mexico.

May 6, 1991.

Kastler & Kamm, Terrence R. Kamm, and John William Clever, Raton, for defendant-appellant.

Erwin & Davidson and John P. Davidson, Raton, for plaintiff-appellee.

OPINION

FRANCHINI, Justice.

Fleet Mortgage Corporation (Fleet) filed a complaint for foreclosure on November 14, 1988, based upon a note and mortgage given by defendants Ronald and Pamela Schuster to International State Bank that was subsequently assigned to Fleet. Both Schusters counterclaimed against Fleet, alleging that Fleet had agreed to accept a deed in lieu of foreclosure, that Ronald had delivered said deed, and that the actions of the parties constituted a complete discharge of the defendants from any further

liability to Fleet. The Schusters claimed damages arising from the alleged breach of the agreement. Following discovery, Fleet and Ronald entered into a stipulation, subject to VA approval, that Fleet would accept a deed in lieu of foreclosure from Ronald, and, additionally, Ronald would execute a new promissory note to the VA, which was done. Thereafter, the VA approved the transaction, and Fleet and Ron Schuster entered into a stipulation of dismissal filed on December 12, 1982, by which Fleet released both Ronald and Pamela Schuster, and Ronald released Fleet. Pamela appeals from the trial court's order granting summary judgment against her on all of her counterclaims. Pamela now contends that there are material issues of fact in her six specifically identified and enumerated causes of action. The causes of action set out in the counterclaim sound in tort and contract. Additionally, Pamela contends that the pleadings and evidence support a negligent misrepresentation claim. We disagree and affirm.

The Schusters had both signed the promissory note secured by a mortgage on a house in Colfax County. The Schusters defaulted on the note payment due April 1, 1988. The Schusters divorced on September 7, 1988. The court awarded the mortgaged property to Ronald, and he was required to pay the note and to indemnify and hold Pamela harmless thereon. Ronald obtained a quitclaim deed from Pamela as part of the documents requested by Fleet. What legal significance, if any, is attached to the giving of the quitclaim deed by Pamela forms the basis of this appeal.

■ Summary judgment is appropriate if no genuine issue as to any material fact exists, so that the movant is entitled to judgment as a matter of law. *State v. Integon Indem. Corp.*, 105 N.M. 611, 612, 735 P.2d 528, 529 (1987); SCRA 1986, 1–056(C). Pamela's claims are based upon her either being a party to or a third-party beneficiary of the "agreement" between Fleet and Ronald to take a deed in lieu of foreclosure. We find that Pamela was neither. The "agreement" at issue was an accord. An accord is "an executory agree-

ment to settle a claim." *Western Bank v. Biava*, 109 N.M. 550, 551, 787 P.2d 830, 831 (1990). Pamela was not a party to the accord. She no longer had an interest in the property that was subject to the accord. The divorce decree entered September 7, 1988, awarded the property to Ronald, and he was required to pay the note and to indemnify and hold Pamela harmless. Pamela contends that while she may not have been a named party to the accord, the agreement did call for her to execute and deliver the quitclaim deed. The issuing of the quitclaim deed was a ministerial act required by the court judgment and decree to carry out the judge's order. A ministerial act is:

> One which a person or board performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority without regard to or the exercise of his or their own judgment upon the propriety of the act being done.

*Black's Law Dictionary* 889 (5th ed. 1979). Furthermore, there was no need for Pamela to execute a quitclaim deed since the court could have proceeded pursuant to SCRA 1986,1–070, which states in relevant part:

> If real or personal property is within the state, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law.

Finally, Pamela did in fact execute the quitclaim deed. This act did not make her a party to the accord.

■ It is a general rule of law that one who is not a party to a contract cannot maintain suit upon it. *Staley v. New*, 56 N.M. 756, 250 P.2d 893 (1952). Pamela, therefore, contends that since she is not a party to the agreement, she was a third-party beneficiary to the accord. A third party may be a beneficiary of such contract, and as a beneficiary may have an enforceable right against a party to a contract. *Permian Basin Inv. Corp. v. Lloyd*, 63 N.M. 1, 312 P.2d 533 (1957). Whether a party is a third-party benefi-

**50**

ciary depends on if the parties to the contract intended to benefit the third party. *McKinney v. Davis*, 84 N.M. 352, 503 P.2d 332 (1972). "Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." *Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 581, 734 P.2d 1258, 1264 (1987). An examination of the letter that Pamela contends forms the basis of the accord does not show an intent to benefit her, nor did she produce any evidence of such. If anything, Pamela was an incidental beneficiary: "a person who is neither the promisee of a contract nor the party to whom performance is to be rendered [but who] will derive a benefit from its performance." 2 S. Williston, *A Treatise on the Law of Contracts* § 402 (W. Jaeger 3d ed. 1959). As an incidental beneficiary, she had no right to recover from the accord. *See Permian Basin Inv. Corp.*, 63 N.M. at 7–8, 312 P.2d at 537 (construing 4 A.L. Corbin, *Corbin on Contracts* § 776 (1951)).

■ Summary judgment also was proper on the issue of prima facie tort. Fleet set out a prima facie showing of entitlement to summary judgment. *See Koenig v. Perez*, 104 N.M. 664, 666, 726 P.2d 341, 343 (1986). This showing consisted of demonstrating there were no facts, whatsoever, supporting the necessary prima facie tort element of intent to injure plaintiff. *Schmitz v. Smentowski*, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990). The burden then shifted to Pamela "to show at least a reasonable doubt as to whether a genuine issue for trial exists." *Koenig*, 104 N.M. at 666, 726 P.2d at 343. Looking at the record as a whole, we are unable to find any material fact in issue, let alone any material fact supporting the element of intent. *See Pharmaseal Laboratories, Inc. v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977).

Appellant raises five additional issues. We find, however, that our holding that Pamela was neither a party to nor a third-party beneficiary of the accord is dispositive of those issues.

Finally, any remedy available to Pamela would have to be based on an action against her husband under the indemnity and hold harmless provision of the divorce judgment and decree. In view of the foregoing, the judgment of the trial court is affirmed.

IT IS SO ORDERED.

BACA and MONTGOMERY, JJ., concur.